## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| ESTHER KOGUS,<br><br>     Plaintiff,<br><br>       v.<br><br>FIVE PRIME THERAPEUTICS, INC., WILLIAM R. RINGO, FRANKLIN M. BERGER, KAPIL DHINGRA, PEDER K. JENSEN, GARRY NICHOLSON, CAROL SCHAFER, LORI LYONS-WILLIAMS, and THOMAS CIVIK,<br><br>     Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Esther Kogus ("Plaintiff"), by her undersigned attorneys and for this Complaint against Defendants, alleges upon knowledge with respect to her own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF THE ACTION

1.      This action arises from a proposed transaction (the "Transaction") through which Five Prime Therapeutics, Inc. ("Five Prime" or the "Company"), a clinical-stage biotechnology company focused on developing immune modulators and precision therapies for solid tumor cancers, will be acquired by an affiliate of Amgen Inc. ("Buyer").

2.      The Company's board of directors (the "Board") approved the Transaction on March 4, 2021.

3.      Thereafter, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Buyer will acquire each outstanding share of Five Prime common stock in exchange for $38.00 in cash, for a total deal value of approximately $1.9 billion.

4.      In order to close, Buyer must acquire a majority of the outstanding shares of common stock pursuant to a tender offer that it commenced on March 18, 2021 (the "Tender Offer").

5.      This action focuses solely on the information about the Transaction provided to stockholders in the Company's Solicitation/Recommendation Statement on Schedule 14d-9 filed on March 18, 2021 in connection with the Tender Offer (the "Recommendation Statement").

6.      The purpose of the Recommendation Statement is to advise stockholders—in advance of the expiration of the Tender Offer on April 16, 2021—of all material information necessary for an informed decision concerning whether to tender their respective shares into the Tender Offer, including information regarding the nature of the deal and its perceived benefits to the Company and stockholders, the process by which the terms of the deal, including its price, were negotiated by the Board, and the basis for the Board's decision to approve it, among other matters.  If the Recommendation Statement fails to disclose all material information, or misstates material information, stockholders face irreparable harm because their tender (or lack thereof) will be uninformed (or misinformed), and the consummation of a transaction under such pretenses typically cannot be remedied by money damages.

7.      In this case, the Recommendation Statement omits or misstates critical information regarding multiple issues that stockholders are entitled to fully and fairly understand before casting their ballots.  These issues are fundamental to the Transaction, and include (in brief):

a.      the basic financial information, created by Five Prime management, that the Board relied on to conclude that the Transaction price was fair to stockholders;

b.      the financial analyses undertaken by the Board's Financial Advisor (defined below); and

c.      information regarding the Financial Advisor's prior engagements and whether the Board considered any potential conflicts of interests prior to engaging the Financial Advisor to serve as its advisor in the Transaction.

8.      The Company's misstatements and omissions regarding these material issues render the Recommendation Statement misleading in violation of Section 14(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), which prohibits false and misleading statements in connection with a tender offer.

9.      By this action, Plaintiff seeks to compel Defendants to supplement or amend the Recommendation Statement to immediately disclose to stockholders—and in any event before the expiration of the Tender Offer on April 16, 2021—all material information required to fully and fairly understand the issues regarding the Transaction identified in this complaint.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(d) of the Exchange Act and Rule 14d-9.

11.      This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

13.     Plaintiff is, and has been continuously throughout all relevant times, the owner of shares of Five Prime common stock.

14.     Defendant Five Prime is a Delaware corporation with a principal place of business at 111 Oyster Point Boulevard, South San Francisco, California.  Five Prime's shares of common stock are traded on the Nasdaq under the ticker symbol "FPRX."  Five Prime is a party to the Merger Agreement.

15.     Defendant William R. Ringo ("Ringo") is chairman and a member of the Board.

16.     Defendant Franklin M. Berger ("Berger") is a member of the Board.

17.     Defendant Kapil Dhingra ("Dhingra") is a member of the Board.

18.     Defendant Peder K. Jensen ("Jensen") is a member of the Board.

19.     Defendant Garry Nicholson ("Nicholson") is a member of the Board.

20.     Defendant Carol Schafer ("Schafer") is a member of the Board.

21.     Defendant Lori Lyons-Williams ("Lyons-Williams") is a member of the Board.

22.     Defendant Thomas Civik ("Civik") is a member of the Board and the chief executive officer and president of the Company.

23.     Defendants Ringo, Berger, Dhingra, Jensen, Nicholson, Schafer, Lyons-Williams, and Civik are collectively referred to as the "Individual Defendants."

24.     The Individual Defendants and the Company are collectively referred to as the "Defendants."

## FACTUAL BACKGROUND

### Background Of The Company And The Transaction

25.     Five Prime is a clinical-stage biotechnology company focused on developing immune modulators and precision therapies for solid tumor cancers.

26.     On March 4, 2021, Five Prime's Board caused the Company to enter into the Merger Agreement.

27.     Pursuant to the terms of the Merger Agreement, Five Prime's stockholders will receive $38.00 in cash for each share of Five Prime common stock that they own.

28.     The Company's press release announcing the Transaction stated, in relevant parts:

   a. "Amgen (NASDAQ: AMGN) and Five Prime Therapeutics (NASDAQ: FPRX), a clinical-stage biotechnology company focused on developing immuno-oncology and targeted cancer therapies, today announced an agreement under which Amgen will acquire Five Prime Therapeutics for $38.00 per share in cash, representing an equity value of approximately $1.9 billion. This acquisition adds Five Prime's innovative pipeline to Amgen's leading oncology portfolio."

   b. "Under the terms of the merger agreement, which was approved by the Boards of Directors of both companies, Amgen will commence a tender offer to acquire all of the outstanding shares of Five Prime's common stock for $38.00 per share in cash. Following the completion of the tender offer, a wholly-owned subsidiary of Amgen will merge with Five Prime and shares of Five Prime that have not been tendered and purchased in the tender offer will be converted into the right to receive the same price per share in cash as paid in the tender offer (other than shares held by stockholders who properly demand and perfect appraisal rights under Delaware law)."

   c. "The transaction is expected to close by the end of the second quarter and is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Five Prime's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976."

**The Company Files A Misleading Recommendation Statement**

29.     On March 18, 2021, the Company, at the Board's direction, filed the Recommendation Statement with the U.S. Securities and Exchange Commission ("SEC"), setting forth information, subject to amendment or revision, regarding the terms of the Transaction and the process by which the Board negotiated it.

30.     The Recommendation Statement, as discussed in detail below, contains multiple material misstatements and omissions on issues of critical importance to stockholders.

**The Recommendation Statement Omits Material Information<br>Regarding Certain Management Financial Projections**

31.     A company's obligation to disclose financial projections when recommending stockholders tender into an M&A transaction is particularly significant.  Indeed, the Court of Chancery of the State of Delaware has stated:

> In the context of a cash-out merger, reliable management projections of the company's future prospects are of obvious materiality to the electorate. After all, the key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company. *In re PNB Holding Co. S′holders Litig.*, 2006 WL 2403999, at *15, Strine, V.C. (Del. Ch. Aug. 18, 2006).

32.     Because changes in these projections can result in dramatically different valuations, such information is also virtually *per se* material in the eyes of regulators and routinely disclosed in M&A transactions.  However, the Recommendation Statement's disclosures regarding the Company's financial projections omit material information regarding such projections and stockholders are entitled to this information here.

33.     <u>First</u>, the Recommendation Statement fails to disclose all line items regarding the projections used for "Unlevered Free Cash Flow," including (a) income taxes (net of projected

impact of net operating losses), (b) depreciation and amortization, (c) changes in net working capital, and (d) capital expenditures.

34.     Second, the Recommendation Statement fails to disclose all line items included in EBIT, including (a) underlying line items, (b) the specific adjustments made to those unadjusted line items, and (c) the specific inputs and assumptions used to make any such adjustments.

35.     Third, the Recommendation Statement fails to disclose all line items included in "Gross Profit," including (a) the specific adjustments made to the unadjusted metrics and (b) the specific inputs and assumptions used to make any such adjustments.

36.     All of the disclosure deficiencies set forth in this section must be remediated in order to permit stockholders to fairly evaluate management's financial projections, which directly underlie the deal price.

**The Recommendation Statement Omits Material Information**
**Regarding The Financial Advisor's Various Analyses**

37.     Item 1015(b)(6) of Regulation M-A promulgated under the Exchange Act requires specific disclosure of "the bases for and methods of arriving at" the findings and recommendations contained in a financial advisor's fairness opinion.

38.     However, the Recommendation Statement omits material information regarding the valuation analyses performed by Lazard Frères & Co. LLC on behalf of the Board (the "Financial Advisor") and stockholders are entitled to this information here.

39.     First, with respect to the Financial Advisor's analysis labeled "Selected Public Company Analysis," the Recommendation Statement fails to disclose (a) the specific metrics for all compared companies and (b) the specific inputs and assumptions used to select the applied range of multiples of estimated EV/Probability Adjusted FY+5 Revenue of 2.3x and 4.4x.

40.    <u>Second</u>, with respect to the Financial Advisor's analysis labeled "Selected Transactions Analysis," the Recommendation Statement fails to disclose (a) the value of each selected precedent transaction and (b) the specific inputs and the assumptions used to select the applied range of multiples of estimated TV/Probability Adjusted FY+5 Revenue of 5.0x and 7.6x.

41.    <u>Third</u>, with respect to the Financial Advisor's analysis labeled "Discounted Cash Flow Analysis," the Recommendation Statement fails to disclose (a) the range of enterprise values calculated for Five Prime, (b) the specific inputs and assumptions used to determine the discount rate range of 10.0% to 12.0%, (c) Five Prime's weighted average cost of capital, (d) the range of Five Prime's terminal values, and (e) the specific inputs and assumptions used to determine the negative terminal growth range of (50%) – (10%).

42.    All of the disclosure deficiencies set forth in this section must be remediated in order to permit stockholders to fairly evaluate the credibility of the Financial Advisor's fairness opinion.

**The Recommendation Statement Omits Material Information Regarding The Financial Advisor's Potential Conflicts of Interest**

43.    A company's obligation to disclose potential conflicts of interest with its financial advisor when soliciting stockholder approval of an M&A transaction is also particularly significant.  Indeed, a leading treatise has stated that "any disclosure document should set forth in detail the advisor's [relationships with the parties] . . . and any potential conflict of interest such as any relationship with the other party to the transaction." Lou R. Kling & Eileen T. Nugent, *Negotiated Acquisitions of Companies, Subsidiaries and Divisions* § 22.04[2], fn 15 (2019).

44.    However, the Recommendation Statement omits material information regarding potential conflicts of interest related to the Financial Advisor.

45.   <u>First</u>, the Recommendation Statement fails to disclose the timing and nature of the past services the Financial Advisor provided to Five Prime and its affiliates, as well as the amount of compensation it received for providing such past services.

46.   <u>Second</u>, the Recommendation Statement fails to disclose whether the Financial Advisor has provided past services to Buyer or its affiliates.

47.   All of the disclosure deficiencies set forth in this section must be remediated in order to permit stockholders to fairly evaluate the credibility of the Financial Advisor's fairness opinion.

**COUNT I**
**<u>VIOLATION OF SECTION 14(D) OF THE EXCHANGE ACT AND RULE 14D-9</u>**
(Against All Defendants)

48.   Plaintiff repeats and realleges all of the allegations set forth above.

49.   The Recommendation Statement violates Section 14(d) of the Exchange Act and Rule 14d-9, as set forth in detail in the allegations above, because it makes material misstatements of fact and omits to state material facts which are necessary to make the statements therein not materially false or misleading.

50.   The Individual Defendants are liable for violations of Section 14(d) of the Exchange Act and Rule 14d-9 because they were responsible for the creation and approval of the misstatements and omissions in the Recommendation Statement, and for the dissemination of such statements to stockholders.  By virtue of their positions within the Company, the Individual Defendants were aware of the materially misleading nature of the information disclosed and their duty to ensure that the Recommendation did not contain material misstatements or omissions. Nonetheless, the Individual Defendants were, at a minimum, negligent in causing the Company to file the Recommendation Statement with the misstatements and omission described herein.

51.     Five Prime is liable for violations of Section 14(d) of the Exchange Act and Rule 14d-9 as the issuer of the misstatements and omissions in the Recommendation Statement.

52.     The misstatements and omissions in the Recommendation Sttement are material because they alter the total mix of information made available to stockholders, and a reasonable stockholder would consider the information discussed herein to be important in deciding how to tender their respective shares.

53.     Plaintiff and other stockholders face immediate and irreparable harm because of the Recommendation Statement's failure to fully and accurately describe multiple important elements of the proposed Transaction.  If the Tender Offer were permitted to proceed without this material information, it would cause stockholders to potentially tender shares in favor of the proposed Transaction on the basis of misinformation.  The Tender Offer would be both uninformed and invalid, and the result (especially if the Transaction is approved) would be effectively impossible to reverse or otherwise compensate with damages.

54.     For these reasons, Plaintiff has no adequate remedy at law and seeks injunctive relief herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Preliminarily and permanently enjoin Defendants, and all persons acting in concert with them from proceeding with, consummating or closing the Transaction;

B.     In the event Defendants consummate the Transaction, rescind and set it aside or award rescissory damages;

C.     Direct the Individual Defendants to disseminate a supplemental or amended Recommendation Statement that does not contain untrue statements of material fact

and that states all material facts necessary to make the statements contained therein

not misleading;

D.      Declare that Defendants violated Sections 14(d) of the Exchange Act and Rule 14d-

9 promulgated thereunder and are liable for all associated damages;

E.      Award Plaintiff all attorneys' fees, expert fees, and expenses incurred in

prosecuting this action; and

F.      Award all other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all triable claims.

Dated: April 6, 2021                          **RIGRODSKY LAW, P.A.**

                                  By:   */s/ Gina M. Serra*
                                        Seth D. Rigrodsky (#3147)
                                        Gina M. Serra (#5387)
                                        Herbert W. Mondros (#3308)
                                        300 Delaware Avenue, Suite 210
                                        Wilmington, DE 19801
                                        Telephone: (302) 295-5310
                                        Facsimile: (302) 654-7530
                                        Email: sdr@rl-legal.com
                                        Email: gms@rl-legal.com
                                        Email: hwm@rl-legal.com

                                        **C.O. LAW, APC**
                                        Clark Ovruchesky
                                        2404 Broadway, Suite 150
                                        San Diego, CA 92102
                                        Telephone: (619) 356-8960
                                        Email: co@colawcalifornia.com

                                        *Attorneys for Plaintiff*